IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RUBEN RAMIREZ, § | | |
| TDCJ No. 1819361, § | | |
|     *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION No. 5:15-cv-00333 | |
| § | | |
| FEAZEL, *et al.*, § | | |
|     *Defendants*. § | | |

**Defendant Feazel's Motion for Summary Judgment**

Defendant Hurshal Feazel[1] files this Motion for Summary Judgment and requests this Court grant summary judgment in his favor because there are no genuine issues of material fact regarding whether Plaintiff Ruben Ramirez has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Ramirez has also failed to state claims for assault, retaliation, and for violations of 18 U.S.C. § 242 and Sections 39.03 and 39.04 of the Texas Penal Code.[2]

**Statement of the Case**

Plaintiff Ruben Ramirez, proceeding *pro se* and *in forma pauperis*, is an inmate in the custody of the Texas Department of Criminal Justice (TDCJ) and was incarcerated at the Dominguez State Jail in San Antonio, Texas at all times relevant to this lawsuit. He currently resides at the Polunsky Unit in Livingston, Texas. Offender Ramirez filed his complaint pursuant to 42 U.S.C. § 1983 on April 22, 2015. DE 1. Because Ramirez does not specify which capacity he is suing Defendant Feazel, it is assumed he is suing him in both his individual and official

---

[1] Defendants Harris, Rivera, and Mize have filed a Motion for Partial Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) contemporaneously with Defendants Feazel's Motion for Summary Judgment.

[2] All Defendants, including Defendant Feazel, advise that they will not be submitting a motion for summary judgment regarding the merits of Plaintiff's claims arising under the Eighth Amendment—namely the claims of excessive use of force and failure to protect Plaintiff from that force. Genuine issues of material fact remain with regard to the merits of Plaintiff's Eighth Amendment claims against Defendants. Defendants maintain their assertion that they are entitled to qualified immunity, as pled in their original and amended answers.

capacities. Ramirez claims that on April 21, 2013, Defendants Harris, Rivera, and Mize used excessive force on him in violation of his Eighth Amendment rights. DE 1 at 4. Ramirez alleges that on this date, 10-12 officers entered his dorm to conduct a cell search. *Id.* at 10. Ramirez was exiting the dorm per the officers' instructions, but as he was walking toward the door, Ramirez claims that an offender kicked a sock in his direction. *Id.* at 11. An officer ordered him to pick up the sock, but when Ramirez told him that was not his sock, Officer Mize told him he would write Ramirez up for disobeying an order if he did not pick up the sock. *Id.*

Once Ramirez bent over to pick up the sock, he was "immediately attacked" by Defendants Harris, Mize, and Rivera. *Id.* These officers kicked, punched, and cursed at him. *Id.* Offender Ramirez claims they handcuffed him but continued to punch and kick him while he was on the ground. *Id.* He then contends that after being punched, kicked, and kneed for about five minutes, an officer said "Here comes the video camera! Get off him!" *Id.* Ramirez also alleges that during the whole time the use of force was occurring, Defendant Feazel was standing nearby and did not try to intervene or say anything to stop the other officers, thus failing to protect him from the alleged excessive use of force. *Id.* at 12. Ramirez claims that because of this use of force, he suffered several injuries, including "permanent nerve damage" to his left wrist, headaches, abrasions, and sleep deprivation from his head being pounded on the floor. *Id.* at 12-13. In addition to Eighth Amendment claims, Ramirez also appears to bring claims for assault and retaliation and claims under 18 U.S.C. § 242 and Sections 39.03 and 39.04 of the Texas Penal Code. *Id.* at 10, 14-15. Ramirez seeks compensation for his injuries, and the cost of the lawsuit. *Id.* at 4.

**Summary Judgment Evidence**

Defendant Feazel attaches the following exhibit in support of his affirmative defense that Ramirez has failed to exhaust his claims against him.

**Exhibit A:**     Plaintiff Ruben Ramirez's TDCJ Grievance Records from February 2013 to December 2013 with accompanying business records affidavit (Bates No. MSJ Exhibit A 001- 005).

## Arguments and Authorities

### A.  The Standard for Summary Judgment

Summary judgment should be granted when the moving party conclusively establishes that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). There is no issue for resolution at trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once the moving party has carried his burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996).

Disagreement among the parties as to the facts will not prevent summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. On the contrary, summary judgment is precluded under Rule 56(c) only when the dispute is genuine and the disputed facts might affect the outcome of the suit. *Id*. at 248; *see also Speaks v. Trikora Lloyd P.T*., 838 F.2d 1436, 1438-39 (5th Cir. 1988). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1048 (5th Cir. 1996) (quoting *Little*, 37 F.3d at 1075). A court will "not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

**B.  Ramirez did not exhaust his failure to protect claim against Defendant Feazel.**

### 1.  Exhaustion Standard under the Prison Litigation Reform Act (PLRA)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Recently, the Fifth Circuit has held that "the PLRA pre-filing exhaustion requirement is mandatory and nondiscretionary." *Moussazadeh v. Texas Dept. of Criminal Justice,* 703 F.3d 781, 788 (5th Cir. 2012) (internal citation omitted). The Supreme Court has also expressly found the PLRA leaves "no question that exhaustion is mandatory . . . and that unexhausted claims cannot be brought into court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Additionally, "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012) (per curiam). In other words, "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process *before* filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding." *Id.* (emphasis added).  This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Congress enacted the PLRA in an effort to address the large number of prisoner complaints filed in federal court.  *See Jones*, 549 U.S. at 203.  Many prisoner complaints, which "account for an outsized share of filings in federal district courts," are frivolous and without merit. *Id*. Accordingly, the PLRA seeks to "reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In requiring exhaustion, the PLRA serves an important function as it "allows prison officials an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Prior to *Jones*, the Fifth Circuit also emphasized this concern by holding that prison administrators must have "a fair opportunity under the circumstances to address the problem that will later form the basis of suit." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). The amount of information necessary to give officials a "fair opportunity" to address the problem will generally depend on the type of problem about which the inmate is complaining. *Id.* at 517. For example,"[i]f an inmate claims that a guard acted improperly, we can assume that . . . a prisoner could ordinarily be expected to provide . . . details regarding who was involved and when the incident occurred." *Id.*

Moreover, the Supreme Court has held that exhaustion under the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). To properly exhaust remedies, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules." *Jones*, 549 at 922-23 (quoting *Woodford*, 548 U.S. at 88). Although the PLRA itself does not specify what constitutes proper exhaustion, the Supreme Court has held that this determination is made by asking whether the prisoner has complied with the prison grievance process; this process will vary from state to state. *Jones*, 549 at 922-23.

Texas prisons utilize a two-step formal grievance process. *Johnson*, 385 F.3d at 515. A Texas prisoner must file a Step 1 grievance within 15 days of the incident being grieved. *Id.*; TDCJ OFFENDER ORIENTATION HANDBOOK 74 (last updated Sept. 2015), *available at* http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf. Step 1 grievances are evaluated at the prison facility where the prisoner is incarcerated. *Johnson*, 385 F.3d at 515. Upon receiving an adverse Step 1 grievance response from prison administrators, the prisoner may then appeal that response by filing a Step 2 grievance within 15 days of receiving the Step 1 response. *Id.* Step 2 grievances are evaluated at the state level. *Id.*; TDCJ OFFENDER

ORIENTATION HANDBOOK 74. This procedure ensures that prison administrators will have a fair opportunity to address prisoner concerns prior to litigating them. *Johnson*, 385 F.3d at 522. The Fifth Circuit requires a prisoner to strictly adhere to TDCJ grievance procedures before a claim may be deemed properly exhausted. *See id.* at 515 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

### 2. Ramirez failed to exhaust his failure to protect claim against Defendant Feazel.

Ramirez did not properly exhaust his failure to protect claim against Defendant Feazel. Offender Ramirez did timely file a Step 1 grievance, No. 2013133499, regarding the use of force on April 24, 2013 (three days after the use of force occurred). Exhibit A at 4-5. He attached this grievance to his complaint. DE 1 at 6-7. In this grievance, he complains he was physically assaulted by three officers: Harris, Rivera, and Mize. Exhibit A at 1; DE 1 at 6. He goes on to discuss the injuries he allegedly sustained. Exhibit A at 1-2; DE 1 at 6-7. Defendant Feazel is not mentioned anywhere in the grievance (other than when Ramirez lists him as a person he tried to resolve his problem with before filing a formal complaint). Exhibit A at 1; DE 1 at 6. Offender Ramirez never makes any complaints against Defendant Feazel in the grievance and never even mentions that there was another officer present while the use of force was occurring who failed to protect him from the other officers. Offender Ramirez also filed a Step 2 grievance on the use of force. Exhibit A at 3-4; DE 1 at 8-9. Yet again, Ramirez fails to mention in this grievance an officer, let alone Feazel by name, who was standing around while the use of force was occurring. He only complains about his injuries from the use of force and his medical care for his injuries and asks why the Office

of the Inspector General has not yet contacted him to investigate his claim. Exhibit A at 3; DE 1 at 8. Even if Ramirez had mentioned his complaints against Defendant Feazel in his Step 2 grievance, this would not constitute proper exhaustion as inmates must grieve each issue through *both* steps. *See Randle v. Woods*, 299 Fed. Appx. 466, 467 (5th Cir. 2008) ("Each issue in the complaint must be presented in a step one grievance, and may subsequently be appealed in a step two grievance procedure. Offenders are not allowed to present new issues in step two.").

A grievance describing a use of force against one defendant is not sufficient to exhaust a failure to protect claim against another defendant. *See Hudson v. McAnear*, No. C-09-327, 2011 WL 67199, at *5 (S.D. Tex. Jan. 10, 2011). In *Hudson*, the inmate alleged in his complaint that an officer, McAnear, used excessive force against him without provocation and that another officer, Pulido, was present during this assault and did not intervene to end the assault. *Id.* at *1. While the plaintiff did file a grievance against McAnear, Defendants argued that Plaintiff never filed a grievance against the second officer, Pulido, nor complained in any of his grievances that a second guard failed to intervene. *Id.* at *5. Plaintiff responded that he was not required to name Pulido specifically because TDCJ had sufficient notice of Pulido's actions to investigate him. *Id.* The court found that by Plaintiff's failure to mention Pulido or his actions in his grievance, prison officials were unable to investigate his complaint against Pulido. *Id.* When Plaintiff failed to cite any extraordinary circumstances for why he did not grieve against Pulido specifically, the court dismissed Plaintiff's failure to protect claim against Pulido for failure to exhaust. *Id.* at *6.

Here, as in *Hudson*, there is no evidence that Ramirez filed a grievance against Defendant Feazel, nor complained in any of his grievances that a fourth correctional officer failed to intervene in the use of force. Offender Ramirez has also presented no reason as to why Feazel was not named in the grievances concerning the use of force. From the allegations in his complaint, Ramirez was

clearly aware of the role Defendant Feazel played, or did not play, in failing to intervene in the alleged assault. *See* DE 1 at 12 ("The entire time these Officer(s) were attacking me, Sgt. Feazel was standing there not trying to stop them."). Based on his grievances, officials would have had grounds only to investigate Defendants Harris, Rivera, and Mize's use of force; they would have had no reason to suppose that any fellow officers observed the attack and stood aside. *See Johnson*, 385 F.3d at 517 (citing with approval the Sixth Circuit's holding in *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir.2001) that "a grievance specifically complaining of a beating at the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched"). Offender Ramirez's grievances describing the use of force were insufficient to give prison administrators a fair opportunity to address his complaints against Feazel. *See Johnson*, 385 F.3d at 522. Therefore, Offender Ramirez's failure to protect claim against Defendant Feazel should be dismissed for failure to exhaust.

## C.  Offender Ramirez's assault and battery claim is barred by the Texas Tort Claims Act.

To the extent Ramirez is attempting to bring a state law claim for assault and battery against Defendant Feazel, this claim should be dismissed under Section 101.106(f) of the Texas Tort Claims Act (TTCA). Section 101.106(f) of the TTCA provides that "if a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment, and if it could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code § 101.106(f); *Franka v. Velasquez*, 332 S.W. 3d, 367 (Tex. 2011). The Texas Supreme Court in *Franka* found its construction of Section 101.106(f) "foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment." *Id.* Under the Court's construction of Section 101.106(f), a government employee is entitled to dismissal

upon a showing that the (1) the employee acted within the general scope of his employment, and (2) "suit could have been brought under the Act—that is, plaintiff's claim is in tort and not under another statute that independently waives immunity." *Id.* at 381. In other words, under *Franka*, all tort claims, including intentional torts, "could have been brought" against the governmental unit regardless of whether the Act waives immunity from suit. *Bordges v. City of Flower Mound, Tex.*, No. 4:11-CV-310, 2011 WL 5600339, at *5 (E.D. Tex. Oct. 14, 2011), *report and recommendation adopted*, 2011 WL 5599925 (E.D. Tex. Nov. 16, 2011); *Franka*, 332 S. W. 3d at 385.

There is no question that Ramirez's assault and battery claim is brought against Defendant Feazel for conduct committed during the course and scope of his employment as a TDCJ correctional officer. Moreover, Ramirez's state law claims for assault and battery "could have been brought" under the TTCA. *See Herrera v. Aguilar*, No. SA-10-CV-00569-DAE, 2013 WL 4784125, at *4 (W.D. Tex. Sept. 6, 2013) (holding inmate's assault and battery claims "could have been brought" under the TTCA). Therefore, because Offender Ramirez's assault and battery claims fall under the TTCA, the assault and battery claim against Defendant Feazel in his individual capacity should be dismissed. Furthermore, Section 101.057(2) of the TTCA provides that the TTCA "does not apply to claims arising out of assault, battery, false imprisonment, or any other intentional tort." Thus, the TTCA expressly preserves immunity against intentional torts, including assault and battery. *See Herrera*, 2013 WL 4784125 at *2. Given that the TTCA retains sovereign immunity for intentional torts, Defendant Feazel is entitled to sovereign immunity, and Ramirez's assault and battery actions are barred by the TTCA.

**D. Ramirez does not state a claim for retaliation.**

To the extent Offender Ramirez is arguing that Defendant Feazel retaliated against him, he has not stated a claim for retaliation. In order to prevail on a claim of retaliation, a prisoner must

establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation, which requires inmate to show that, but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998). "Prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."*Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, 387 (5th Cir. 2010) (citing *Woods v.* Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities." *Reese v. Skinner*, 322 Fed. Appx. 381, 383 (5th Cir. 2009). Yet, conclusory allegations without a specific factual basis are not sufficient to state a claim of retaliation. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Rather, to state a claim for retaliation, "an inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (internal quotations omitted). In order to meet his burden, an inmate must show more than his "personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Additionally, causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *MacDonald v. Steward,* 132 F.3d 225, 231 (5th Cir.1998) (quoting *Johnson*, 110 F.3d 299 at 310. Moreover, the inmate must show the adverse act was taken "in an effort to chill" the inmate's constitutionally protected activity. *Johnson*, 110 F.3d 299 at 310.

Here, Ramirez lists retaliation as one of his claims against Defendants. DE 1 at 10. He simply states that the officers denied him his Constitutional right to be free from "retaliation by use of excessive force where no force should have been used." *Id.* Ramirez does not offer *any* other

facts or allegations to support his claim of retaliation. For example, he does not specify what Constitutional right he was exercising when Defendants retaliated against him, or even clarify what the retaliatory adverse act was. Moreover, he does not produce any "direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred." *See Allen*, 388 F.3d at 149. A conclusory statement that Ramirez was retaliated against is not sufficient to state a claim. *Woods*, 60 F.3d at 1166. Thus, to the extent Ramirez is attempting to argue that Defendant Feazel retaliated against him in some way, he has failed to state a claim.

**E.  18 U.S.C. § 242 does not give rise to a private cause of action.**

Ramirez's claim under 18 U.S.C. § 242 is without merit. Ramirez contends that Defendant Feazel violated Section 242, Title 18 of the United States Code which provides that "[w]hoever, under color of any law . . . willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year. . . ." However, this statute is a criminal statute and "do[es] not provide for a provide cause of action." *Ali v. Shabazz*, 8 F.3d 22, 22 (5th Cir. 1993) (holding that inmate plaintiffs, who alleged defendants deprived them of their constitutional rights under the First and Eighth Amendment without due process, had no cause of action under 18 U.S.C. § 242). Thus, Ramirez's claim under Section 242 has no arguable basis in law or fact and should be dismissed.

**F.  The Texas Penal Code does not give rise to private causes of action.**

Ramirez's claim that Defendant Feazel violated Sections 39.03 and 39.04 of the Texas Penal Code is also meritless. Sections 39.03 and 39.04 of the Texas Penal Code govern the crimes of official oppression and violations of the civil rights of a person in custody, respectfully. *See* Tex. Penal Code Ann. §§ 39.03; 39.04 (West 2015). The Texas Penal Code, however, "does not

create private causes of action." *Urias v. Ground*, No. 5:11-cv-142, 2011 WL 6318553, at *3 (E.D. Tex. Oct. 17, 2011), *report and recommendation adopted sub nom. Urias v. Grounds*, 2011 WL 6318550 (E.D. Tex. Dec. 15, 2011) (holding that inmate's claims under Section 39.03 and 39.04 of the Texas Penal Code were "without merit"); *see also Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied). A victim "does not have standing to participate as a party in a criminal proceeding." *Aguilar*, 923 S.W.2d at 745 (quoting Tex. Const. art. I, § 30(e)). Therefore, Offender Ramirez's claims under the Texas Penal Code are without merit.

### G.  Defendant Feazel is entitled to Eleventh Amendment immunity.

To the extent Offender Ramirez is suing Defendant Feazel in his official capacity for monetary damages, Defendant Feazel is entitled to Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state, or one of its agencies or departments, regardless of the nature of the relief requested. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Neuwirth v. Louisiana State Bd. Of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988). A suit for damages against a state official in his official capacity is not a suit against that individual, but a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Consequently, a state official acting in his official capacity is not a "person" subject to suit under Section 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The State may waive Eleventh Amendment Immunity or Congress may specifically override the immunity under Section 5 of the Fourteenth Amendment. *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 473-74 (1987). Yet, neither Congress nor the State of Texas has waived Eleventh Amendment immunity with regard to Section 1983. *See Will*, 491 U.S. 58 at 66 ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.").

Offender Ramirez's allegations against Defendant Feazel concern matters occurring within the scope of his employment as a state employee working for TDCJ, a state agency. Accordingly, to the extent that Offender Ramirez is suing Defendant Feazel for money damages in his official capacity, his claims are barred by the Eleventh Amendment.

## Conclusion

Without first properly exhausting his remedies, Ramirez cannot maintain this suit against Defendant Feazel as he cannot satisfy the mandates of the PLRA 42 U.S.C. § 1997e(a). He also has failed to state claims for retaliation, assault, and violations of 18 U.S.C §242 and Texas Penal Code §§ 39.03 and 39.04. For these reasons, Defendant Feazel respectfully requests the Court grant his Motion for Summary Judgment and dismiss Plaintiff's claims against him based on Plaintiff's failure to exhaust his administrative remedies, failure to overcome Defendant Feazel's entitlement to sovereign immunity, and failure to state claims for relief.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**
First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Kimberly L. Kauffman*
**KIMBERLY L. KAUFFMAN**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 24089255
Kimberly.Kauffman@texasattorneygeneral.gov

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Office: (512) 463-2080 / Fax: (512) 936-2109

**ATTORNEYS FOR DEFENDANTS FEAZEL, HARRIS, RIVERA, AND MIZE**

## NOTICE OF ELECTRONIC FILING

I, **KIMBERLY L. KAUFFMAN**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a correct copy of the foregoing **Defendant Feazel's Motion for Summary Judgment** in accordance with the Electronic Case Files system of the USDC - Western District of Texas, on November 6, 2015.

*/s/ Kimberly L. Kauffman*
**KIMBERLY L. KAUFFMAN**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **KIMBERLY L. KAUFFMAN**, Assistant Attorney General of Texas, certify that a true copy of the above **Defendant Feazel's Motion for Summary Judgment** has been served by placing it in the United States Postal Service, postage prepaid, on November 6, 2015, addressed to:

Ruben C. Ramirez, TDCJ No. 1819361
TDCJ - Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
**Plaintiff Pro Se**

*/s/ Kimberly L. Kauffman*
**KIMBERLY L. KAUFFMAN**
Assistant Attorney General